## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

EVAN WONACOTT,

        Plaintiff,

    v.

EDWARD McGRATH,

        Defendant.

Case No. 3:23-cv-499-SI

**OPINION AND ORDER**

Michael E. Haglund, Christopher Lundberg, and Shay S. Scott, HAGLUND KELLEY LLP, 2177 SW Broadway, Portland, OR 97201. Of Attorneys for Plaintiff.

David G. Hosenpud and Mohammed N. Workicho, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       In his First Amended Complaint ("FAC") (ECF 4), Plaintiff Evan Wonacott

("Wonacott") asserts four claims against Defendant Edward McGrath ("McGrath"). First,

Wonacott seeks a court-supervised winding up of what he contends is a dissolved joint venture

with McGrath. Second, Wonacott alleges two counts of breach of fiduciary duty. Third,

Wonacott states that McGrath breached the implied covenant of good faith and fair dealing

contained within the alleged joint venture agreement. Fourth, Wonacott asserts that McGrath

engaged in conduct that constitutes a wrongful disassociation from the alleged joint venture,

PAGE 1 – OPINION AND ORDER

which is actionable under Oregon Revised Statutes § 67.225. Wonacott is a U.S. citizen who now resides in Spain, and McGrath is a U.S. citizen who resides in Oregon. Wonacott alleges that a substantial part of the events giving rise to the claims asserted in this lawsuit occurred in Oregon, even though much of the business of the alleged joint venture was carried out in China. Pending before the Court is McGrath's motion to dismiss this action ("Motion") under the doctrine of *forum non conveniens* (ECF 5). Although McGrath lives in Oregon and runs his businesses from Oregon, he argues that China is the best and most convenient forum in which to adjudicate Wonacott's claims against him. For the reasons stated below, the Court denies McGrath's Motion.

## BACKGROUND

Wonacott alleges that in 2012, McGrath, as the owner of Marine Lumber Co. ("Marine Co."), and Wonacott, as the owner of Nehalem Pacific Corporation ("Nehalem"), established a business relationship constituting a joint venture. FAC ¶¶ 8-9. Under this relationship, Marine Co. purchased wood products from Nehalem that Nehalem manufactured in China. Marine Co., located in Oregon, then sold the products worldwide. The two companies allegedly shared net income throughout the existence of their business relationship, with two-thirds paid to McGrath and one-third paid to Wonacott. *Id*.

Wonacott further alleges that in April 2015, McGrath formed a new company, Marine Lumber International LLC ("Marine LLC"), an Oregon LLC with Marine Co. as its sole member. *Id*. ¶ 12. In 2017, Wonacott, who had been living in China, moved to Spain but returned to China every four to five weeks to manage Nehalem's operations. *Id*. ¶ 13. Wonacott alleges that in 2019, McGrath forced Wonacott out of the business that they had built through their alleged joint venture. *Id.* ¶ 15. In 2020, McGrath allegedly registered a new company in China with the same address as Nehalem. *Id.* ¶ 17. On August 18, 2020, Wonacott responded to what

he characterizes as hostile correspondence from McGrath by stating that Wonacott was withdrawing from the joint venture. *Id.* Wonacott contends that McGrath has breached his duty under Oregon law to wind up the alleged joint venture and provide an accounting. *Id.* ¶ 18.

McGrath views the facts differently. As stated in his Motion, McGrath contends that the "purported joint venture (if it exists at all) was created, developed, and maintained in China." Motion at 1. He states that around 2004, Wonacott had engaged in unrelated businesses in China but told McGrath that he had recently been laid off. McGrath asked Wonacott if he would be interested in working with Marine Co. McGrath envisioned Wonacott's role as sourcing and managing the procurement of plywood in China to be sold to Marine Co.'s customers. Wonacott performed this role in China from 2004 until 2008 and received a fee for inspecting and procuring plywood for Marine Co. Around 2008, Wonacott created Nehalem, a Chinese company. *Id*. at 2.

By 2012, Wonacott's business was failing, and he was going to deregister Nehalem. *Id.* At the same time, McGrath was making plans to open a factory in China to expand Marine Co.'s foreign manufacturing. After learning about McGrath's plan, Wonacott said to McGrath that Nehalem's presence in China could help Marine Co.'s business plans. Seeking to expand operations in China, McGrath asked Wonacott to source and procure plywood for Marine Co. in China. According to McGrath, Wonacott accepted this role and worked with Marine Co. from 2012 to 2020. McGrath contends that Wonacott was an arm's-length vendor to Marine Co., for which Marine Co. paid Wonacott a management fee. *Id*.

McGrath further contends that in 2017, McGrath started two new lines of business out of China, selling mostly to foreign buyers in Europe and South America. *Id*. at 3. According to McGrath, Wonacott broke promises to McGrath and engaged in wrongful conduct in China.

PAGE 3 – OPINION AND ORDER

McGrath states that while Wonacott committed to working in China for ten years, he soon

moved to Spain after Marine Co. was fully invested. McGrath adds that Wonacott delegated the

entire manufacturing process to Chinese staff, allowing them to manage millions of dollars of

McGrath's assets in China with little or no oversight. McGrath also alleges that Wonacott

committed fraud in China to the detriment of McGrath and his businesses. *Id*. at 3-5. In a

declaration filed in opposition to McGrath's Motion, Wonacott denies many of McGrath's

contentions. ECF 18.

## DISCUSSION

### A.  The Doctrine of *Forum Non Conveniens*

In 1947, the Supreme Court announced that the Scottish doctrine of *forum non*

*conveniens* applied to cases in federal court. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09

(1947), the Court approved using that doctrine in federal cases "at law" and affirmed a district

court's decision to dismiss. The Supreme Court explained:

> The principle of *forum non conveniens* is simply that a court may
> resist imposition upon its jurisdiction even when jurisdiction is
> authorized by the letter of a general venue statute. These statutes
> are drawn with a necessary generality and usually give a plaintiff a
> choice of courts, so that he may be quite sure of some place in
> which to pursue his remedy. But the open door may admit those
> who seek not simply justice but perhaps justice blended with some
> harassment. A plaintiff sometimes is under temptation to resort to a
> strategy of forcing the trial at a most inconvenient place for an
> adversary, even at some inconvenience to himself.

*Id*. at 507.[1] In a companion case, *Koster v. (American) Lumbermens Mutual Casualty Co*., 330

U.S. 518, 522, 531-32 (1947), the Court approved using the doctrine to dismiss "equitable"

---

[1] For an excellent discussion of the history of *forum non conveniens*, as well as its
strengths and weaknesses, see Maggie Gardner, *Retiring Forum Non Conveniens*, 92 N.Y.U. L.
REV. 390 (2017).

claims.[2] In a later case, the Supreme Court noted that "*Gilbert* held that dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 n.15 (1981).

The doctrine, however, must be applied sparingly. In the leading Ninth Circuit case discussing the doctrine, the court stated:

> The doctrine of *forum non conveniens* is a drastic exercise of the court's "inherent power" because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. The harshness of such a dismissal is especially pronounced where, as here, the district court declines to place any conditions upon its dismissal. Therefore, we have treated *forum non conveniens* as "an exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal.

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citation omitted). Further, "[t]o succeed, a defendant must make a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1111 (9th Cir. 2020) (citations, quotation marks, and ellipsis omitted). In *Global Commodities*, the court cited with approval an earlier Ninth Circuit decision for the proposition that "dismissal for *forum non conveniens* is typically only appropriate where a plaintiff chooses a forum wholly

---

[2] Congress has since partially codified the doctrine in 28 U.S.C. § 1404(a) "for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). "For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* 'has continuing application in federal courts.'" *Id*. at 60-61 (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

unrelated to the dispute." *Id*. at 1112 (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000)).

"To prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano*, 643 F.3d at 1224. As described in *Gilbert*, a non-exhaustive list of the *private* interest factors includes:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

330 U.S. at 508. Also, there may be questions as to the enforceability of any judgment that might be obtained. *Id*. In addition, as described in *Gilbert*, a non-exhaustive list of the *public* interest factors includes: "[a]dministrative difficulties [that] follow for courts when litigation is piled up in congested centers instead of being handled at its origin"; the burden of jury duty "upon the people of a community which has no relation to the litigation"; and the appropriateness in having the trial of a case "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508-09.

## B.  Application

### 1.  Adequacy of Alternative Forum

In support of his motion to dismiss, McGrath filed a copy of a declaration that Dr. Jacques deLisle submitted in 2013 in the unrelated case of *King.com Ltd. v. 6 Waves LLC*, 2013 WL 9586150 (N.D. Cal. Nov. 1, 2013). ECF 7-1. Dr. deLisle stated in that declaration that he is a Professor of Law, Professor of Political Science, Director of the Center

for East Asian Studies, and Deputy Director of the Center for the Study of Contemporary China at the University of Pennsylvania. In his 2013 declaration, Dr. deLisle opined that "Chinese courts provide a forum in which foreign parties can and do sue and win suits to protect intellectual property rights and to secure a range of remedies (including damages and injunctive relief)." *Id*. at 1. (The pending dispute, however, does not involve intellectual property rights.)

In opposition to McGrath's motion, Wonacott submitted a declaration from Chen Xiang Min, a lawyer practicing in China for more than 20 years. ECF 17. In that declaration, Attorney Chen states that, among other things, "Chinese courts will not accept" this dispute between Wonacott and McGrath "because it is brought by a U.S. Citizen living in Spain against a U.S. Citizen living in Oregon based on accountings that were conducted, and distributions that were made, from Oregon." *Id*. ¶ 9. He adds that "[t]here is no prohibition under China law preventing Chinese witnesses to travel to the United States to testify in U.S. cases." *Id*. ¶ 13.

In reply, McGrath filed a statement from Lu Jiancheng, who has practiced law in China for more than 28 years. ECF 25. Attorney Lu Jiancheng concludes that, among other things:

> Attorney Chen's declaration makes several misstatements about the content of Chinese law as it applies to litigation involving U.S. citizens. For example, Article 266 and 272 of the Civil Procedure Law of the People's Republic of China allow U.S. citizens to litigate in China business disputes involving Chinese business operations, production costs, financial books and records, Chinese vendors, financial accounting for such operations, and tax refunds. They also provide that Chinese courts have jurisdiction to resolve contractual or property disputes if the defendant has property that can be seized in China or if the contract was performed [in China] regardless of whether the defendant has a domicile in China.

*Id*. ¶ 3. He adds that "Article 130 of the Civil Procedure Law of the People's Republic of China also provides that Chinese courts shall have jurisdiction over a dispute between U.S. citizens if the relevant party has not objected to such jurisdiction." *Id*. ¶ 4. (McGrath represents that he would not object to Chinese courts exercising jurisdiction over this dispute if it were brought in

China.) Attorney Lu Jiancheng further states: "It is illegal for Chinese citizens to give testimony in China for use in a U.S. court without express approval from the Chinese Central Authority, which in my experience is extremely rare." *Id.* ¶ 8.

With his sur-reply, Wonacott filed a supplemental declaration from Attorney Chen. ECF 35. Among other things, Attorney Chen states: "I have also reviewed the materials provided by Lawyer Lu Jiancheng. He claims that I made a wrong statement about Chinese law in my previous statement. . . . [L]awyer Lu Jiancheng's understanding is wrong." *Id*. ¶¶ 3-4. Attorney Chen adds: "The Chinese court will not accept the case, and I explained the basis of this view in my previous testimony." *Id*. ¶ 12. Finally, McGrath filed as "supplemental authority" a copy of China's current Civil Procedure Law (ECF 39), and Wonacott filed as "supplemental authority" testimony by Professor Donald Clarke of the George Washington Law School before the U.S.-China Economic and Security Review Commission (ECF 40).

The Court finds both Attorney Chen and Attorney Lu Jiancheng to have expertise in Chinese law and practice. Unfortunately, however, they disagree with each other on key issues. If Attorney Chen's opinions are correct, then China would not provide an adequate alternative forum given the specific facts of the pending dispute. On the other hand, if Attorney Lu Jiancheng's opinions are correct, then China would provide an adequate alternative forum. Because the Court's ultimate decision on the pending motion is driven by the private and public interest factors discussed below, the Court will simply assume without deciding, for purposes of the pending motion, that China offers an adequate alternative forum.

### 2. Private Interest Factors

As previously noted, the key private interest factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; and all other practical problems that make trial of a

case easy, expeditious and inexpensive. As to these factors, both sides make legitimate points. The primary documents needed for an accounting, if one is to be ordered, are in Oregon, are in English, and are under the control of McGrath. This militates in favor of denying his Motion. McGrath, however, asserts that he may need certain documents located in China, either to support his defense or even to establish potential counterclaims. Many of these documents also appear to be under the control of McGrath (or his business associates in China), even if they are physically located in China and mostly written in Chinese.

The Court is not persuaded that McGrath will be unable to obtain for use in this lawsuit documents located in China, especially if relevant business documents in China can be scanned and electronically sent to the United States. Similarly, if testimony from witnesses located in China (and largely employed by McGrath or his business associates there) are needed in this lawsuit, the Court is not persuaded that such testimony cannot be made available here, either remotely or in person, depending on the parties' needs, preferences, and resources. Further, based on comments made during the oral argument, it appears that McGrath's resources are more substantial than Wonacott's, making litigating in China far more difficult for Wonacott than litigating in Oregon would be for McGrath. As already noted, McGrath lives in Oregon and runs his businesses from Oregon.

### 3. Public Interest Factors

As for the public interest factors, the origin of this dispute appears to be in Oregon, where McGrath and his companies (Marine Co. and Marine LLC) are headquartered. Based on that conclusion, it would not be unreasonable to ask an Oregon jury to resolve the dispute between Wonacott and McGrath. (Although there are no western-style civil jury trials in China, the practice of "people's assessors" working collegially with judges to resolve disputes in China is not inherently unreasonable.) Moreover, the claims alleged by Wonacott, if factually supported,

PAGE 9 – OPINION AND ORDER

would appear to call for the application of Oregon statutory and common law. That is a task handled often by the federal courts in the District of Oregon but would likely impose a substantial burden on a court in China.

### 4. Summary

Even if China provides an adequate alternative forum, both the private and public interest factors militate in favor of denying McGrath's Motion, and it is McGrath's burden to "demonstrate[e] . . . that the balance of private and public interest factors favors dismissal." *Carijano*, 643 F.3d at 1224. Moreover, dismissals under the doctrine of *forum non conveniens* should be granted "sparingly." *Id.* Nor is there any evidence that Wonacott chose this forum, which is where McGrath lives, works, and runs his businesses, "solely in order to harass the defendant or take advantage of favorable law." *See Piper Aircraft*, 454 U.S. at 249 n.15. In short, McGrath has not made a "clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Global Commodities*, 972 F.3d at 1111 (ellipsis omitted). Finally, Wonacott's chosen forum is not "wholly unrelated to the dispute." *Id.* at 1112; *see also Ravelo Monegro*, 211 F.3d at 512.

## CONCLUSION

The Court denies Defendant Edward McGrath's Motion to Dismiss for *Forum Non Conveniens* (ECF 5).

**IT IS SO ORDERED**.

DATED this 27th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 10 – OPINION AND ORDER